IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**JEFF AND REBECCA REGAN**                                                  **PLAINTIFFS**

**VERSUS**                                          **CIVIL ACTION NO. 2:08cv285KS-MTP**

**ANNETT HOLDINGS, INC.,, D/B/A TMC
TRANSPORTATION; AND JAMES H. LIVINGSTON,
INDIVIDUALLY AND AS AN AGENT OF ANNETT
HOLDINGS, INC., D/B/A TMC TRANSPORTATION,
AND JOHN AND JANE DOES A-G**                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment or for Partial Summary Judgment **[#48]** and Motion to Strike Expert and Supplement thereto **[#50 & #55]** filed on behalf of the defendant. The court, having reviewed the motions, the responses, the briefs of counsel, the authorities cited, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the defendant's motion for partial summary judgment is well taken and should be granted as set forth below and that the remaining portions of the motion should be denied and that the Motion to Strike should be denied. The court specifically finds as follows:

## FACTUAL BACKGROUND AND FINDINGS

This lawsuit concerns a rear end collision that occurred on November 8, 2007, on Mississippi Highway 98 near the Elks Lake Road overpass in Forrest County, Mississippi. On that date, the plaintiff, Rebecca Regan (hereinafter "Rebecca"), was

working her office job at Jarden Consumer Solutions when she left for lunch.  She was traveling west on Highway 98 toward the Elk's Lake Road overpass as a part of her usual lunch routine in her 2008 Dodge minivan.  She has testified that she was in no particular hurry to get anywhere.

From the evidence which has been produced, it appears that at the time of the collision, defendant Livingston was traveling westbound in the right lane of travel. Livingston had previously been on the side of the highway performing a vehicle inspection and cargo check according to the defendants.  There is evidence in the record to suggest that he had in fact been sleeping or resting.

After re-entering the highway, Livingston contends that he was traveling at a speed of 25 miles per hour in the right lane of travel when Regan's vehicle slammed squarely into the back of his trailer. The photographs of the accident scene show that Livingston was fully in the right lane of travel.  It is hotly disputed whether he had just entered the highway or was a distance down the road.  He has testified that he was some 750 feet from his point of entrance into the highway but the plaintiff contends, and the photographs tend to indicate, that Livingston had just entered the highway from underneath the overpass.  At any rate, it was a clear, sunny day and Rebecca had no obvious impairments which would have prevented her from either slowing down or changing lanes to avoid Livingston's vehicle.

Rebecca Regan has testified that she does not remember anything about the accident and her husband, Jeff Regan, was not involved in the accident.  However, Eric Peterson, who works in some sort of capacity dealing with communication lines or cell phone towers, happened to be traveling in the same direction as Mrs. Regan, a

moderate distance behind her, and witnessed the entire collision. At the accident scene, he gave Mr. Regan (and also, upon information and belief, the Defendant driver) his business card. Peterson's affidavit, filed in response to this motion, provides in relevant part:

> 2. I was an eyewitness to the collision between the van driven by Mrs. Regan and the eighteen wheeler truck, which occurred on Highway 98 around Hattiesburg, Mississippi, on or around November 8, 2007. I was traveling in the same direction as the Regan van, about a couple of hundred yards or so behind her. I am the person that called the police to the scene, or at least one of the people.
>
> 3. Based upon my observation, the truck was parked underneath the overpass near the wreck. As the truck pulled out from underneath the overpass and onto the inside lane where the van was already, she hit him direct in the back of the trailer. The truck appeared to be going about 10 miles per hour. I could see him, but because of the shadow being cast down from the bridge, and because the back of the trailer was covered with a gray or black tarp, the truck was really hard to see. I guess that is why Mrs. Regan did not see him. The Defendants have gone to great lengths to show, most accurately, that the highway leading up to the collision (and therefore the highway behind the Defendant driver) is straight and flat for over a mile. The Defendant was traveling from a shadowy area (harder for Regan to see), while Regan was approaching him in the noon day sun. If the Defendant driver did, in fact, say that he did not see her coming, as this witness testifies, he could not possibly have been keeping a reasonable and prudent lookout. Her presence was unmistakable. I do not know why he could not see her coming. There were no trailer lights, flashers or any turn signals flashing on the truck prior to the crash.
>
> 4. I was traveling 60 miles per hour or sothrough there and I did not see Mrs. Regan accelerating any faster than me, so that is about what I would estimate her speed to be.
>
> 5. When I pulled over and talked to the driver, he told me that he had been pulled over to rest. Then he said something like, "I didn't see her." And I said, "well, you know" and he said "by the time I knew that somebody was back behind me, I felt a surge in the back of the truck and I knew I got hit." He was very clear when he told me he didn't see her.
>
> 6. The wreck blew the axle right off the back of the trailer. It was a big impact, a bad wreck. I took about a dozen pictures and you can see the footprint of the tires coming off the gravel on the side of the road and the tire print goes right to

where his tires stopped and fell off the trailer. It appeared to me the truck driver failed to yield to the van's right of way.

7. The left lane next to the van was empty. It is not clear to me whether Mrs. Regan had enough time to react to the truck suddenly pulling into her lane. I suppose a jury can decide that.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue,

therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

The defendants argue that the plaintiffs' claims fail as a matter of law because they cannot present evidence to establish that the defendants committed any wrongful act or omission whatsoever. They point out that Rebecca Regan has no recollection of the accident and Jeff Regan wasn't there. They also argue that the plaintiffs' designated expert has no opinion about the matter and have moved to strike his

testimony as irrelevant. The defendants argue in response to Peterson's affidavit that it should be excluded as it was not provided prior to the discovery cutoff. This is a red herring. Peterson was disclosed and known to all parties from the beginning. In fact, it appears that the defendants either had access to or took the statement of Peterson over a year ago. To argue that the affidavit should not be considered is disingenuous.

A review of the evidence and the Peterson affidavit indicates that there are numerous material factual disputes regarding the entrance of the Livingston vehicle into the highway. This disputes are classic jury issues.

The bulk of the defendants' arguments for summary judgment stand on their assertion that Livingston was not at fault in causing the accident. Since the court has found that there is a material dispute of this critical issue, the defendants' motion should be denied in large part. However, the plaintiffs have conceded Rebecca's future lost wages/earing capasity claim, the punitive damages claim, the negligent hiring/retention claim and Jeff's loss of consortium claims. The defendants are entitled to judgment on these claims. The court will deny all other requested relief to the defendants with the caveat that the arguments may be re-urged after appropriate evidence is adduced at trial.

The court has also reviewed the defendants' Motion to Strike the plaintiffs' expert, Brett Alexander. The basis for the motion is the assertion by the defendants that Alexander does not state an opinion as to causation of the accident. They contend that he only gives locations, distances and other measurements related to the accident and argue that such is not relevant. That may or may not prove to be true. At this stage, the court cannot make that call but will be in a better position to review the relevance of

Mr. Alexander's testimony when it is offered. The court would note, and cautions the plaintiffs, that Mr. Alexander will not be allowed to testify outside the parameters established in his expert reports produced in discovery.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Partial Summary Judgment **[#48]** filed on behalf of the defendant is granted in part and the plaintiffs' claims for Rebecca's future lost wages/earning capacity, punitive damages, negligent hiring/retention and Jeff's loss of consortium are dismissed with prejudice. All other request for relief is denied.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion to Strike Expert and Supplement thereto **[#50 & #55]** filed on behalf of the defendant is denied for the time being and will be revisited during the trial for relevance and admissibility in conformity with the well established law of this Circuit dealing with expert testimony. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 16th day of December, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE